Chattanooga Fire and Police Pension Fund are going to have to exceed 50 minutes to plan a 15-minute repair by this evening. Good morning, your honors. I'd like to reserve two minutes for rebuttal, if I may. My name is Gerald Tidwell. I'm a member of the Hamilton County Tennessee Bar. For 34 years now and I represent retired Chief of Police Bobby Dodd of the Chattanooga Police Department. This is a pension case. There has been one before this court. I note that Judge Rogers wrote the opinion regarding COLA or cost of living increases. This is something much different. How is it different? The difference is COLA is an adjustment for inflation. The default option as it's described by Judge Mattis is a portion of the options you have when you first become a Chattanooga Police Officer. I guess I'm referring to the business about whether it's vested or accrued. That's absolutely the question at hand. What vested at 10 years when Bobby Dodd vested in 1997? We would argue that that's part of his vested pension. After 10 years? After 10 years. The benefit that you're talking about is something that only comes into effect after 25 years. Is that correct? That's true, Your Honor. When you say something that you're in no sense entitled to is vested and accrued, that's hard for me to understand. Especially in light of Frazier. Well, when Chief Dodd vested, there was no provision. He vested, but what's the name of this benefit? Default option. Default option. No option option or whatever. That's what I call it. That only comes into effect, that language, that kind of strange language, only applies after 25 years, right? Well, you have to make it. If you only go 24 years, it's not an issue, right? Is that right? That's true, but you That makes it hard for me to understand how it vested at 10 years. I can see how it might have vested at 25 years, but that's not the issue before us. Well, Your Honor I noticed it was taken away before the 25 years. You see, I'm just candidly telling you what my difficulty is with the argument. How do you address that? Well, Your Honor, the provisions of the pension plan that allow for these options at 25 years were in the plan when he started. When he vested at 10 years, they were there. The provision that I note in my What does that mean when he vested? That means when he's entitled to a set of benefits that didn't include this thing. Well, I'm trying to get at that. The provision that says you must vest and accrue wasn't even part of the plan in 1997. The term accrual was added in 2000, as we noted in our brief, and he had already vested then. Also, the provision that allows the city to amend or change the pension plan for economic necessity was added in 2000. These weren't even part of the plan he vested in, and I would argue that those options were part of the plan he vested in, because he had to make a selection of some sort. At what point did he make a selection? He did make the selection after 25 years, yes. Well, I mean, you don't even, you're not even concerned with this until after 25 years. I mean, it's not like you're selecting a benefit on the front end. I mean, it's something you get to pick after 25 years. It's an option available to you. But you're going to have to exercise one of them or exercise none, which automatically defaults to being part of the plan. But the fact that you don't even choose the option until after 25 years, doesn't that strongly suggest that it has nothing to do with anything prior to that time? Well, what connects it is it's a part of your base calculation of what you get. It's not some addition you may get later. This is part of what you're going to get. In this case, it reduced his pension benefit by 5%, which is a great deal of money over the course of his life and potentially his wife's. So that... I guess if I understand your argument, it's in the nature of when I was accumulating these 25 years, I anticipated that at the end of the 25 years, I'd have the option to do a no-option option. Exactly. Exactly. And I understand that. It's kind of like an expectation. That makes sense to me as well. It's just hard for me to squeeze that into the words vested and accrued. Well, are you with me? That's exactly the problem with this, in my opinion. I mean, we know that there have been a lot of painful changes made in pension systems in recent years and very painful to public employees. And the reason it's so painful is that some, or one of the reasons, is that it was within the reasonable expectation of the employee, but it may not be a part of the vested and accrued benefits, which has a very particularized legal meaning. I think that's the distinction that Judge Rogers is trying to draw and that I am equally puzzled about. If your honors are correct, then we don't have a claim, I admit. I would say that since he vested prior to any change in the language, it requires accrual, which I think is a more vague concept. I think he vested in what was there then. I would also like to point out that these changes, while painful, this change was unnecessary. There's a sunset provision in it. Anybody employed after 92 wasn't going to get it anyway. They were running out of people that even had applicability to it. It only saved $60,000 against $260 million of gross value. Then it might have been a really dumb decision. Well, it doesn't have any economic consistency. You're talking equities. It's not a very equitable option. I mean, it looks like it was a mistake when they wrote it. It may have been, your honor. I mean, when you start to say, well, this is kind of a fairness thing, it's down there as well, doesn't it? No, I submit that dozens and dozens of people are enjoying it as we stand here today. And only a few people were cut out of it after expecting it for 24 years. The savings to the plan is minuscule. It's in the 0, 0, 0, 2 percent of the total plan value. There's no economic necessity here. There's no necessity. Why it was changed probably was the housekeeping that we allege in the brief. I mean, I understand that argument. It makes a certain amount of sense. But if you're making that kind of general, this seems wrong kind of argument, it looks like housecleaning cleaned up something that was wrong. Well, what I'm really trying to address, and I agree with you, your honor, but what I'm trying to address is the fact that Blackwell talks about economic necessity. The pension plan amendment in 2000 talks about it. It's not there. So what is the purpose if that matters, if it doesn't? And what he vested at at 10 years is the question. What did he get at 10 years? If it's accrual, then he's out of luck, I admit. Unless Blackwell trumps. However, if he vested in what? He dealt with Blackwell in that other opinion as well. I'm sorry? He dealt with Blackwell in that other opinion as well. Yes, your honor, and I have read that opinion. We do the best we can with the case before us. Maybe that case is right or wrong, but we're bound by it now, right? I agree we're bound by it, but I would submit that COLA is fundamentally a different calculation or part of the pension than this particular part. I'm not saying it's directly controlling. I was just asking whether the analysis was controlling. Well, yes, and I had noticed on, I was looking at a provision that states it's discussing Blackwell. It talks about, and I'll just read it if I could, that Blackwell, the Tennessee Supreme Court, established that a public employer may make reasonable modifications in an existing pension plan if necessary to create or safeguard actuarial stability, provided that then accrued or vested rights of a member, beneficiaries are thereby impaired. To me, that implied that there's a difference between accrual and vesting, which is part of the basis of this argument. Vesting occurred, and what vested at 10 years was not the plan we have now. And if it fundamentally affects the calculation, I submit 5% over the course of a man's lifetime. He's only 52. His wife's younger than him. That's in the record. This is hundreds of thousands of dollars we're talking about. COLAs were a lot of money, too, though. Exactly. They were a great deal, although they still have some COLA benefit, and it could go back to something similar to what was before as long as they reached that, I think, 80% threshold. And Chief Dodd was part of that case. I think he's one of the plaintiffs. I didn't represent him. One of my partners did. And our firm doesn't specialize in pension plans, or maybe we would have won one of these at trial. But in any event, our argument here is that what he vested at at 10 years is part of that. Those options are part of that. I thought the vesting at 10 years he could cash out. You can. That's a lot different from getting the benefit he gets at 25 years. Oh, it is. The benefit continues to build after vesting. Vesting is just an event that allows you to say legally I'm entitled to that. It is, in effect, a contract. And I think vesting creates a contractual interest here, which leads to some of our other arguments. It seems to me like that's why they add accrued. It has to vest accrued so that you can't say, well, I'm vested in some sort of esoteric sense. Well, accrual has additional meaning, and maybe that is why they added it. I'm not sure. And it has to be vested and accrued in this case as well as in Frazier? Well, I thought in Frazier the analysis was that the COLA doesn't fall under that. However, I'm arguing that he vested prior to any addition of this concept of accrual. And in essence, his right to receive this pension vested at 10 years, whatever financial point he reached, the pension is based on how long you work and your highest three years of salary, et cetera. I'm not talking about that, but the right to receive whatever is available based on your work. It has to accrue, though, right? It has to accrue, yes. Before he's entitled to it under the contract clause? Yes, before he's entitled to actually receive it. But he's still vested in a certain amount at 10 years. So even under your theory, if it's vested but not accrued, he would lose, right? Well, no. He vested at 10 years and the right to pick one of these options is what I'm saying. He vested in the plan that existed is our argument. If we're wrong, then we lose. Doesn't the benefit have to have vested and accrued, or is that just in the other case? Well, that is what is now in the pension plan, I admit. It says vested and accrued. It just didn't say that when he started working there, and it didn't say that when he vested. You're saying it doesn't have to have accrued because when it vested, it didn't say that it had to have accrued. Well, what I'm saying is he vested in the plan that existed at 10 years. That's our argument. And if we're incorrect, we're not going to succeed in this matter. And your honors are hitting the issue that I wanted to talk about. Were there any changes subsequent to 10 years that were beneficial to him? I'm not aware. I don't know, Your Honor. I'm sure there probably were. He probably wouldn't be complaining, saying he didn't get the benefit of those, would he? No, Your Honor. He wouldn't be here if he was complaining about getting more money. He's complaining because he got substantially less than he expected to get, and that's part of our basis. It's a pretty straightforward argument. I understand that it's a little bit harder after Frazier. Oh, I agree. And when we were litigating it, of course, Frazier didn't exist until at some point. I've looked at Frazier, and I realize it limits our abilities here. I'm not going to argue otherwise. However, I still think I'm maybe trying to wiggle through this crack here. I understand your argument. Thank you. I appreciate your candor. Thank you very much, Your Honor. You'll have your rebuttal. Did you save some? I didn't write it down. I did reserve two minutes for rebuttal. Unless there are other questions, I don't mean to walk you through it. I think you're fine. Thank you. May it please the Court, Zachary Green for the City of Chattanooga. Since the appellees were directed to share argument, I'd like to take ten minutes, but hopefully not use all that time. I think the questions the Court has posed hit the nail right on the head. Mr. Dodd admits in his deposition, Record Entry 37-1 at pages 208 through 210 and 224, that he had to be eligible for the 25-year pension that he is retired and receiving to be eligible for this default benefit, whatever we want to call it. The plain language of the pension plan is clear and unequivocal that you have to be eligible to retire with a service retirement pension, 25-year pension, in order to be eligible for this default option. That's the language of 2411C, which says, again, you have to be retired under the provisions of this section. This section is 2411, that's the 25-year pension. To address the 10-year vesting argument, that's plainly wrong. I think, as Judge Norris pointed out, the 10-year vesting provision is 2415. That says at 10 years, you vest in something, and that is the right to a refund if you leave after 10 years to get what you contributed back, or you get this deferred pension until you're 55. It doesn't say anything about the pension that Mr. Dodd has. It doesn't say anything about this default death benefit, no option option, whatever the proper term is. It says nothing about you vest at this time in everything in the pension plan. We agree that the Blackwell case, as Judge Rogers' opinion and Frazier's says, really inapplicable here, but even if it was applicable, Blackwell says that municipal pension plans cannot be frozen against detrimental changes just because someone begins to participate or vest in that plan. I have a question on another issue, if that's all right. Sure, please. I'm curious about the three readings argument. Couldn't the city charter say only two readings are required, but the city ordinance say that three readings are required and those two provisions be consistent? The city charter was amended in 2004 to require only two readings to pass an ordinance, and section two of that ordinance that made that change, it was suddenly passed by referendum, which is required, said that in order to change the charter and all ordinances, it says any laws, all laws inconsistent with this, so anything that says three readings. I understand that, but I'm asking is it inconsistent? Why is it inconsistent? I'm not sure the inconsistency, because it continues. If one thing says you need three for a subcategory of cases, and then there's general rule which says you only need two, both of those could apply. You've met the two, and this thing requires an extra one. I would assert that the charter... Like by saying two, that means it's inconsistent with anything that requires more than two. The charter controls, and it said in 2004 that only two readings are required. Does it say only two readings are required even in those situations where the ordinance says to be changed it requires three? I believe when the charter is changed and it says anything inconsistent with this, which would include a three-reading requirement somewhere else, is repealed, would mean that a two-reading requirement is required. I understand that, it makes sense, but I'm asking what's wrong with the argument, I'm not sure they make it, that it's consistent with that to have a subcategory of cases where three is required. Under brutal logic, those aren't consistent. They aren't consistent, but I think to the extent the language of three readings was kept in the code, that was taken care of subsequently in an ordinance that's referenced by the plaintiff where archaic provisions, as the phrase used, were deleted. The change was made legally effective in 2004 that only two readings were required. If you look at the city council's actions in 2004 and on, including changes made to this pension plan, only two readings were used after 2004. After 2004, it was understood by the city council certainly that only two readings were required to make changes. In fact, that ordinance that deleted the archaic provisions, which was passed subsequently, I think it's 12674 was the ordinance number, Mr. Dodd argued below that that was the ordinance that changed the reading requirement from three to two. But that ordinance was passed on two readings. In fact, if three readings had been required and hadn't been changed, then the ordinance that Mr. Dodd said below, he doesn't make that argument here, made this change from three to two was only passed on two readings. That would be impossible. There's an ordinance that uses the word archaic. I'm sorry? There's an ordinance. Yes. What's that ordinance? It's ordinance 12674. I believe it's in the record at 53-1, page 1039, section 2 of that ordinance. Did that ordinance enable a change in the way the other ordinance was, I don't know if it's right to refer to codification of ordinances, but was in fact worded or does that three readings language in fact persist despite the charter amendment, despite the changes of archaic language? I don't believe the three reading requirement persisted after 2004 when the charter was changed. I mean, are you saying it didn't persist in fact or did it not persist as a matter of law? It did not persist as a matter of law. And the city counts after 2004. But as a matter of fact, you can still go back and find the confusing language. That is true and the city council remedied that. I think when the legal change was made in 2004, the city council's practice, as we have in the record, I think it's record entry 49, there's an affidavit by city attorney Phil Knoblet in the record there that explains that. He says after that 2004 change, the city council always, from then on, operated under the two reading requirement. It understood it. That's not exactly what I was asking. Right, but as a matter of fact, yes, it was there. It was cleaned up. When the ordinance was changed by law and the two reading requirement was implemented, it took some time to go and find where three readings were said everywhere in the code and delete them out and that was fixed. I'm looking at 12674. Yes, Your Honor. Page 1039. Yes, Your Honor. Where's the word archaic? It's in the caption. It says section 2, be it further ordained. I'm sorry, if I said section 2, I believe it's in the caption of that ordinance. An ordinance to amend the code. I apologize, Your Honor, I've given you the wrong side. I apologize. It's 12677. It's the record at 474. I apologize. 474? 474, record entry 41-2 at page 474. It's in the caption there and it's ordinance 12677. I apologize, Your Honor. Is that discussed in the briefs? Yes. I'm not going to have this in time for a question. I apologize for giving you that incorrect side. So with that, we rest on the briefs and we ask that the judgment of the district court be affirmed. All right, Mr. Hill. Judge Gibbons, Judge Rogers, Judge Norris, good morning. I have little to say to add. The court's headed in the right direction. When the plaintiff mentions the Frazier case and Judge Rogers asks about the Frazier case, Frazier doesn't govern specifically because we're talking about different statutory city codes, but the structure of Frazier, which asks the question, does the change affect any accrued or vested benefit, that clearly applies and there's no question that both of those issues have not been met or both of those standards have not been met in this particular case. One thing I would like to address that the plaintiff has alluded to is the necessary and reasonable changes. I don't think the court gets there. That's a step down the road. There has to be first, unequivocally, clearly a contractual right, and if there is, then the court asks the later questions. But I think it's helpful to have some context for the change made, and that context does involve the Frazier case as well. In 2008-2009, when these changes began to occur, the Chattanooga Pension Fund began looking to try to find ways to right the ship, to make the fund more economically sound. It looked first at what it would call easy changes, things that it thought were non-controversial, things it thought should be corrected, as Judge Rogers mentioned, perhaps, or other low-hanging fruit. This was one of those examples. This was a subsidy. This was something that had been given. It was not a part of the vested accrued benefit, and accordingly, it was something that was first done. It was an appropriate, necessary first step for all of the things that were later addressed in the Frazier case. The Frazier case technically addressed only a COLA, but in the Frazier case, the back story is there were tons of other changes that were made to the pension fund. Same thing here. While the plaintiff addresses only one aspect of what was changed here, there were other changes made, perhaps minor, but nonetheless, there were things that were helping to streamline and prepare for later changes that needed to be made. Changes to the investment structure. Changes to what's called the final average salary, which is part of the analysis for what is a pension benefit. Significantly, this change, the change that Chief Dodd objects to, made it more equitable among beneficiaries. At the time, beneficiaries not married did not get this benefit. People who were married did get the benefit. So it actually corrects something that was inequitable to other members. I have nothing further to add. We thank you for your time. Does the court have any questions? Can I ask a question of the counsel if we have time? Yeah. I'll yield more of my time. Thank you. Thank you. That would be helpful. You say this is addressed in your briefs, but I'm not finding it cited. I believe we addressed that argument, the argument that Mr. Dodd made below, talking about an argument that deals with the archaic language in 12677. If I misunderstood your question, I'm not sure we pulled that language out. I'm not sure we pulled that out, but we pointed out in our brief, in our summary judgment papers, because he didn't raise this 12677 argument in this court. He did not make that argument in this court. He made that point below. That argument is not before us. That argument is not before you. Thank you. All right, Mr. Tidwell. Just very briefly, to touch on what Judge Rogers said, and let me say I'm resting on my brief. I wasn't meaning to throw any of my arguments out the window, but as to the three readings. We're talking about the arguments that you raised on appeal. Yes. You raised arguments below, but they're not addressed on appeal. Oh, I didn't mean that. I didn't mean that. I just mean what's addressed. As I understand, your three-reading argument is based primarily on, if not exclusively on, this 11-12 provision of the charter, right? Yes. That's helpful. Thank you. And simply put, it appears at least to me that it is a reasonable argument that the city created this special provision for pension changes, and possibly were not. It's not clear to me that they eradicated it. They certainly didn't make it specific. But, of course, that's the same problem with the statute itself that we're dealing with today that eliminated the option or the default option. It is somewhat vague. But to address just two brief things. Accrual to me, when I think about the word accrual, I think of the gathering of the forces or monies to see what this person gets. In other words, how many years did they work? What was their three highest years of salary, et cetera? That's what you accrue to. The option or the default option was part of the plan that was taken out. As to the economic argument, I don't want to take too much time. But the difficulty I have with that is a little bit inconsistent with what we held in Frazier, which said accrual isn't just how much you can figure out ahead of time. You're correct, Your Honor. That is in the case. And I say that only that accrual to me gets to that. I don't know that it gets to the idea of what option you're going to pick for your relatives that exist past that. And as to the economic argument, I understand what the city is saying. But $60,000 against $250 million, I have to disagree with my friend and colleague, Judge Mattias, who I've known for many years. I don't think an expert is necessary to know that that's not really an economic benefit. And I'll rest at that point. Thank you very much. We appreciate the argument that all of you have given, and we'll consider the case carefully. Thank you. Thank you.